UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAURA B.,[1]

        **Plaintiff,**

  v.                                     **Civil Action 2:22-cv-4253**
                                                 **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**OPINION AND ORDER**

Plaintiff, Laura B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability and Disability Insurance benefits. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the undersigned for a ruling on Plaintiff's Statement of Errors (ECF No. 13), Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 9). Plaintiff did not file a reply memorandum. For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.    BACKGROUND

Plaintiff protectively filed her application for Title II period of disability and disability insurance benefits on October 13, 2020, alleging that she became disabled on May 10, 2019. After Plaintiff's applications were denied at the initial and reconsideration levels, an administrative law judge ("ALJ") held a telephone hearing on October 6, 2021, and issued an unfavorable determination on November 1, 2021. That unfavorable determination became final on September 27, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two contentions of error: (1) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence (specifically related to Plaintiff's ability to stand and walk); and (2) the ALJ erred in his analysis of Plaintiff's fibromyalgia under Social Security Ruling 12-2p. (Pl.'s Statement of Errors 4–11, ECF No. 13.) The undersigned disagrees.

## II.    THE ALJ'S DECISION

On November 1, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 199–215.) At step one of the sequential

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of May 10, 2019. (*Id.* at 201–02.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc and joint disease of the lumbar spine and sacroiliac joints; sacroiliitis of the spine; fibromyalgia; obesity; and an adjustment disorder with mixed anxiety and depression. (*Id.* at 202.) The ALJ also found that Plaintiff had the following non-severe impairments: tachycardia; hypertension, hordeolum of the left lower eyelid; and high cholesterol. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 203–05.) The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] could occasionally climb ramps/stairs, but would be precluded from climbing ladders/ropes/scaffolds. She could occasionally stoop, kneel, crouch, and crawl. The claimant should avoid workplace hazards, such as unprotected heights and machinery. The claimant could perform simple, routine and repetitive tasks, involving only simple work related decisions, with few if any work place changes. She could work in a setting without strict production quotas

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

or fast paced work, such as on an assembly line. The claimant could have occasional interaction with the general public, coworkers, and supervisors, with no customer service responsibilities.

(*Id.* at 205.)

The ALJ then determined at step four that that Plaintiff would be unable to perform her past relevant work as either a loss prevention worker or private investigator. (*Id.* at 214.) At step five, the ALJ, relying upon a vocational expert, found that jobs exist in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity can perform, with representative occupations being mail sorter, garment sorter, or marker. (*Id.* at 214–15.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 215.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of*

4

*Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As set forth above, Plaintiff asserts two contentions of error: (1) the ALJ's residual functional capacity determination is not supported by substantial evidence; and (2) the ALJ failed to properly evaluate Plaintiff's fibromyalgia under Social Security Ruling 12–2p. (Pl.'s Statement of Errors 4–11, ECF No. 13.) The undersigned considers each contention of error in turn.

**A.**     **The ALJ's residual functional capacity determination that Plaintiff can perform light work is supported by substantial evidence.**

       **1.**     **Standards Governing RFC Assessment**

The determination of a claimant's RFC is an issue reserved to the Commissioner. *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner."). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D.

5

Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

### 2. The ALJ did not err in determining Plaintiff's RFC.

The ALJ found that Plaintiff could perform light work, but with the limitations that Plaintiff could "occasionally climb ramps/stairs, but would be precluded from climbing ladders/ropes/scaffolds" and "could occasionally stoop, kneel crouch, and crawl" and "should avoid workplace hazards." (R. 205.) The physical exertion requirements of light work are defined as:

> involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b). SSR 83-10 further explains that the "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." 1983 WL 31251, at *6 (Jan. 1, 1983).

Plaintiff contends that the ALJ's conclusion that Plaintiff can perform light work as defined by 20 C.F.R. § 416.967(b) is not supported by substantial evidence, because "as the evidence documents, [Plaintiff] lacks the ability to stand and walk for 6 hours out of an 8-hour workday on a consistent basis." (Pl.'s Statement of Errors 5, ECF No. 13.) Plaintiff asserts that the record "consistently documents [her] difficulties with standing and walking" and that she "has a long history of degenerative disc disease, lumbar spine; lumbar spondylosis; sacroiliitis; fibromyalgia and numbness and tingling in the bilateral feet." (*Id.* at 6.) Plaintiff testified at the hearing that "she could stand in one place for a couple of minutes and walk for about ten minutes, before changing positions or resting." (*Id.*) She asserts that these complaints "are supported by the objective evidence of record, including years of medical records documenting ongoing pain, even with treatment including pain medication, physical therapy, lidocaine, and steroid injections and left and right lateral ablations." (*Id.* at 6.) Plaintiff asserts that the records "consistently document difficulty transitioning from sitting to standing; an antalgic gait; tenderness over the bilateral sacral spine; limited range of motion; and abnormality in muscle tome [*sic*] in the lumbosacral spine." (*Id.* at 6–7.)

An ALJ must "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Snyder v. Comm'r of Soc. Sec.*, 2023 WL 3673265, at *5 (6th Cir. May 26, 2023) (quoting SSR 16-3p, 2016 WL 1119029, at *6 (Mar. 16,

7

2016)). The Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the location, duration, frequency and intensity of pain; factors that precipitate or aggravate symptoms; the effectiveness and side effects of medications; treatments other than medication; and any measures used to relieve pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p, 2016 WL 119029, at *7.

The ALJ here thoroughly discussed the record evidence and concluded that the objective evidence did not support Plaintiff's subjective complaints:

> The claimant does have underlying medically determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration, or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis. In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by the claimant.

(*Id.* at 211.) The ALJ noted that although Plaintiff had back pain, the record showed no evidence of any "radicular symptoms and the [Plaintiff] maintained intake sensation and 5/5 strength in the lower extremities with negative straight leg testing." (R. 213) (*see also id.* at 209 ("While the claimant reported needing a cane, the record supported no objective weakness in either lower extremity showing 5/5 strength consistently in the lower extremities, citing no trigger points, and evidencing consistently intact sensation with negative straight leg testing.")). As to Plaintiff's back pain symptoms, the ALJ noted that Plaintiff reported 80 percent improvement in symptoms with the use of a combination treatment of pain medications and ablation therapies (*id.* at 209), and that her fibromyalgia condition was found stable with a combination of medications, including Mobic, gabapentin and cyclobenzaprine (*id.*), which support his determination that Plaintiff is capable of light work. *See Smith v. Comm'r Soc. Sec.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical

8

issues can be improved when using prescribed drugs supports denial of disability benefits)). The ALJ also found that Plaintiff's reported symptom severity was "inconsistent with her own self-reported routine activities of daily living" (R. 211), which included independently caring for her own personal needs, including hygiene and grooming; preparing meals and performing routine household chores, with breaks, including laundry, dishes, dusting and cleaning; watering plants; and driving. (*Id.*)

The ALJ was "not required to accept [Plaintiff's] subjective complaints," *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), and the ALJ's conclusion that Plaintiff could perform light work was supported by substantial evidence from the record. And "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citation omitted). The undersigned therefore finds no error in the ALJ's conclusion that Plaintiff can perform light work.

**B.  The ALJ did not err in his analysis of Plaintiff's fibromyalgia.**

Plaintiff contends that the ALJ erred in his consideration of Plaintiff's fibromyalgia pursuant to Social Security Ruling 12-2p, resulting in his failure to include accommodations in his RFC determination for Plaintiff or to consider her inability to perform substantial gainful activity on a sustained basis. (Pl.'s Statement of Errors 8–9, ECF No. 13.) Plaintiff also argues that the ALJ erred in finding Plaintiff's fibromyalgia did not medically equal a listing in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 9–11.) The undersigned disagrees on both points.

**1.  The ALJ did not err in considering Plaintiff's fibromyalgia when determining Plaintiff's RFC.**

In support of her argument that the ALJ erred in his consideration of Plaintiff's fibromyalgia, Plaintiff argues "[h]ere, there is substantial evidence of widespread pain

throughout [Plaintiff's] medical record, despite ongoing treatment and medications. Additionally, the record consistently documents six or more fibromyalgia symptoms, signs, or co-occurring conditions." (*Id.* at 8) (citations omitted). Plaintiff further asserts that "the record is replete with evidence that satisfies the requirements of SSR 12-2p." (*Id.*)

Plaintiff's reliance on SSR 12-2p is misplaced. SSR 12-2p deals primarily with the ALJ's determination of whether fibromyalgia constitutes a "medically determinable impairment" at step two of the sequential evaluation process. Here, the ALJ found Plaintiff's fibromyalgia to be a severe medically determinable impairment. (R. 202.) Therefore, SSR 12-2p requires only that the ALJ consider Plaintiff's fibromyalgia in the remaining steps of the sequential evaluation process, which the ALJ subsequently did. As the Sixth Circuit has explained:

> SSR 12-2p describes criteria for establishing that a person has a medically determinable impairment [ ] of fibromyalgia, SSR 12-2p, at *2–3, the sources of evidence the ALJ may look to, *id.* at *3–4, and how a claimant's subjective assertions of pain and functional limitations are evaluated, *id.* at *4. [SSR 12-2p] also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id.* at *5–6. Importantly, . . . SSR 12-2p . . . merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016). "[A] *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits; particularly so here, where there is substantial evidence to support the ALJ's determination that [plaintiff's] fibromyalgia was improving or, at worst stable." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)). Accordingly, in cases involving fibromyalgia, an ALJ must "decide . . . if

10

the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).

In his RFC determination, the ALJ described in more detail his consideration of Plaintiff's fibromyalgia, stating that she "reported generalized pain, noting she hurt all over and had trouble moving in the morning . . . [and] was diagnosed with fibromyalgia." (R. 209.) The ALJ further noted, however, that Plaintiff was prescribed "Mobic, gabapentin, and cyclobenzaprine" for pain and with "the combinations of medications, [Plaintiff's] fibromyalgia condition was found stable" and "[g]enerally, [Plaintiff] demonstrated normal sensory examination and normal strength in the extremities." (*Id.*). The ALJ also explained that the record did not show that Plaintiff "was routinely seen by a rheumatologist"; that Plaintiff "was not treated with physical or occupational therapy"; and that the record did not show any specific 'trigger point'[3] presence." (*Id.*) The ALJ also explained that he had "*afforded [Plaintiff] the benefit of the doubt* in considering her diagnosis, as it was routinely treated by a medical professional." (*Id.*) (emphasis added).

The ALJ did include Plaintiff's fibromyalgia as one of the factors he considered that justified (1) his "general reduction to light work" (R. 213), and (2) the additional imitations on light work that he determined were appropriate for Plaintiff. (*Id.*) ("The undersigned finds the limitations on climbing, stooping, kneeling, and crouching are supported by claimant's spinal degeneration, body habitus, and reports of widespread pain associated with fibromyalgia.") Plaintiff may disagree with the ALJ's determination of how her fibromyalgia impacted her RFC,

---

[3] *Cf.* SSR 12-2p(II)(A)(2) (requiring "[a]t least 11 positive tender points on physical examination" to make a determination that a person has an MDI of fibromyalgia under the 1990 ACR Criteria for the Classification of Fibromyalgia); *Swain*, 297 F. Supp. 2d at 990 ("The presence of these tender spots are the primary diagnostic indicator of the disease.").

11

but the ALJ did factor her fibromyalgia into that determination. For the reasons set forth above and in Part IV.A.2. of this opinion, the ALJ's RFC determination was supported by substantial evidence. *Cf. Luukkonen*, 653 F. App'x at 399 (dismissing plaintiff's argument that the ALJ failed to properly apply SSR 12-2p because any resulting error would have been harmless where the ALJ considered plaintiff's fibromyalgia a severe impairment at step two).

> 2. **The ALJ did not err in finding Plaintiff's impairments, including fibromyalgia, did not medically equal a listing**

Further, the undersigned finds no error in the ALJ's conclusion at step three that Plaintiff had failed to establish that she met or medically equaled a listing.

The ALJ indicated that "although [Plaintiff] has impairments that are considered to be 'severe,' there is little to no medical evidence in the record to support a finding that [Plaintiff's] impairments, singly or in combination, meet or equal the requirements set forth in the Listing of Impairments (Appendix I, Subpart P, 20 CFR, Part 404)." (R. 204.) The ALJ then specifically discussed several different listings. The ALJ discussed how the listings address obesity, explaining that "Sections 1.00Q, 3.00I and/or 4.00F … provide[] guidance about the potential effects obesity has in causing or contributing to the impairments of the musculoskeletal, respiratory, and/or cardiovascular systems." (*Id.*) The ALJ then noted that he "considered Plaintiff's fibromyalgia in accordance with SSR 12-2p." (*Id.*) The ALJ also analyzed whether Plaintiff's mental impairments, "considered singly or in combination" met or medically equaled listing 12.04 or 12.06. (*Id.*).

The Social Security regulations require the ALJ to find a claimant disabled if he meets or medically equals a listing. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). But neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v.*


*Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). The ALJ should discuss the relevant listing, however, where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing. *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990); *see also Sheeks*, 544 F. App'x at 641. The Sixth Circuit has held that "[a] claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432–33 (6th Cir. 2014) (citing *Sheeks*, 544 F. App'x at 641–42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Zebley*, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely, does not qualify.") and *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 416 (6th Cir. 2011) (holding that it was not harmless error for the ALJ to fail to analyze Step Three as to an impairment found to be severe at Step Two where the claimant put forth evidence that could meet the relevant listing)). Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three. *Smith-Johnson*, 579 F. App'x at 433.

      Plaintiff asserts that she has "documented diagnoses of fibromyalgia; chronic fatigue; co-occurring conditions of depression and anxiety; numbess/tingling; muscle pain; tender points throughout her body; GERD; and symptoms of memory loss and lack of concentration." (Pl's Statement of Errors 10, ECF No. 13.) But Plaintiff must direct the Court to evidence in the record that raises "a substantial question" as to whether her fibromyalgia and other impairments meet or equals a particular listing. As Plaintiff notes, (Pl's Statement of Errors 9, ECF No. 13), although there is no listing for fibromyalgia, SSR 12-2p uses Listing 14.09D (inflammatory

arthritis) as an example listing that might be relevant for claimants with fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869, at *6. However, Plaintiff does not assert that her fibromyalgia, alone on in combination with her other impairments, medically equals Listing 14.09D; nor does she identify any other listing that her fibromyalgia, alone or in combination with her other impairments, allegedly medically equals. Accordingly, she has failed to raise a "substantial question" as to whether her fibromyalgia and other impairments medically equal a listing and has not established any error by the ALJ on this point.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits and that the ALJ's decision was made pursuant to proper legal standards. For the foregoing reasons, the Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner of Social Security's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE